Filed 6/16/15  P. v. McColm CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Trinity)

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>PATRICIA ALICE McCOLM,<br><br>        Defendant and Appellant. | C072960<br><br>(Super. Ct. No. 11F187) |

A jury found defendant Patricia Alice McColm guilty of eight counts of knowingly procuring or offering a false instrument (a proof of service) for filing in a public office.  (Pen. Code,[1] § 115, subd. (a).)  The trial court denied probation and sentenced defendant to an aggregate term of 3 years 4 months in state prison, consisting of 16 months (the lower term) on count one; and a consecutive 8 months each on counts three, four, and six.[2]

---

[1] Further undesignated statutory references are to the Penal Code.

[2] Defendant was sentenced to concurrent terms on the remaining counts.

1

Defendant appeals, contending (1) there is insufficient evidence to support her convictions; (2) the trial court erred in refusing to give a unanimity instruction; (3) defendant was not given adequate notice of the charges against her; (4) proofs of service are not "instruments" within the meaning of section 115; (5) defendant's trial counsel was ineffective in failing to subpoena a key witness; (6) the trial court erred in denying defendant's change of venue motion; and (7) the trial court abused its discretion in denying probation and imposing consecutive sentences.

We shall conclude that none of defendant's contentions has merit, and thus, affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

This case concerns eight proofs of service filed by defendant in three separate lawsuits pending against her in Trinity County.[3] Each of the proofs of service contains a declaration, executed by Jim Dahm, which states that Dahm served the documents listed therein "by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States mail at Lewiston, California."

Laurie Cooke, court services supervisor for the Trinity County Superior Court, became suspicious when she saw that the "business/residence" address listed for Dahm on the proofs of service was the same as that listed for defendant. She also observed that some of the proofs of service indicated that Dahm resided in Trinity County, while others

---

[3] Copies of the eight proofs of service were admitted into evidence. Exhibit No. 1 (count one) had an execution and a filing date of July 1, 2011. Exhibit No. 2 (count two) had an execution date of June 21, 2011, and a filing date of July 13, 2011. Exhibit No. 3 (count three) had an execution date of July 7, 2011, and a filing date of July 13, 2011. Exhibit No. 4 (count four) had an execution date of July 13, 2011, and a filing date of July 15, 2011. Exhibit No. 5 (count five) had an execution date of July 19, 2011, and a filing date of July 21, 2011. Exhibit No. 6 (count six) had an execution date of July 19, 2011, and a filing date of July 21, 2011. Exhibit No. 7 (count seven) had an execution date of August 24, 2011, and a filing date of August 25, 2011. Exhibit No. 8 (count eight) had an execution date of September 16, 2011, and a filing date of September 20, 2011.

indicated that he resided in Shasta County. Concerned that the documents listed in the proofs of service may not actually have been served by the individual listed (Dahm), Cooke reported the irregularities to the marshal's office. According to Cooke, it is important that each document filed with the court be true and correct, and that documents are served by a person not a party to the action in order to maintain the integrity of the court file. She explained that judges rely on proofs of service in making decisions, such as whether to enter a default judgment.

During cross-examination, Cooke explained that at some point the court executive officer had assigned her to be defendant's sole contact at the court. Cooke acknowledged that her dealings with defendant had "been challenging," and that she is the complaining witness in a criminal complaint against defendant for harassment. She denied "initiat[ing] this investigation" because she "had problems" with defendant. While she had never gone back and reviewed a party's proofs of service or referred proofs of service for investigation during her 13 years with the court, she explained that no other proofs of service had "dr[awn] a flag for me."

Dahm testified that in the spring of 2011 defendant asked him to initial a small stack of papers that she represented had something to do with Pacific Gas and Electric Company (PG&E). Defendant told him where to place his initials. Dahm initialed the documents on the same day in the same place but did not recall the exact date he did so. He did not read the documents before initialing them. Defendant asked him to mail documents but he refused because he "didn't want to get too involved in whatever was going on . . . ." When Dahm finished initialing the documents, defendant took them. Dahm identified the initials on the eight proofs of service that form the basis of the charges against defendant as his. On another occasion, Dahm signed (as opposed to initialed) some documents for defendant.

3

## DISCUSSION

### I
### Defendant's Convictions Are Supported by Substantial Evidence

Defendant contends her convictions must be reversed because there is insufficient evidence "that there were false statements in the proofs of service." She is mistaken.

"In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we 'examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Guerra* (2006) 37 Cal.4th 1067, 1129.) "We do not reweigh evidence or reevaluate a witness's credibility." (*Ibid*.)

Defendant was convicted of eight counts of violating section 115, subdivision (a), which states: "Every person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States, is guilty of a felony." Each of the proofs of service that form the basis of defendant's convictions reflects that Dahm served the documents listed therein "by placing a true copy thereof . . . in a sealed envelope with postage thereon fully prepaid in the United States mail at Lewiston, California." Dahm, however, testified that defendant asked him to mail the documents, but he refused. From this evidence, the jury reasonably could infer that the proofs of service were false, and that defendant knew they were false when she caused them to be filed with the court. Such evidence is sufficient to support defendant's convictions for knowingly procuring or offering false instruments for filing in violation of section 115, subdivision (a).

4

Defendant argues that while "the declaration as worded might be taken to mean that the declarant personally placed the documents in a mail receptacle," Code of Civil Procedure section 1013a, subdivision (3) "provides for delegation of the clerical function of actually placing the document in the mailbox." There are at least two problems with defendant's argument. First, there is no evidence to support a finding that Dahm delegated the task of mailing the documents listed in the proofs of service to anyone. To the contrary, the only evidence is that defendant asked him to mail the documents, and he refused. Second, while Code of Civil Procedure section 1013a, subdivision (3), relied on by defendant,[4] does set forth a method for service by mail that does not require that the declarant personally place the documents in mail, the proofs of service at issue herein state that Dahm "served the within [document(s)] . . . *by placing a true copy thereof . . . in the United States mail at Lewiston, California,*" (italics added) which is consistent with Code of Civil Procedure section 1013a, subdivision (1),[5] *not* subdivision (3), which

---

[4] Code of Civil Procedure section 1013a, subdivision (3) provides that proof of service by mail may be made by the following method: "An affidavit setting forth the exact title of the document served and filed in the cause, showing (A) the name and residence or business address of the person making the service, (B) that he or she is a resident of, or employed in, the county where the mailing occurs, (C) that he or she is over the age of 18 years and not a party to the cause, (D) that he or she is readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service, (E) that the correspondence would be deposited with the United States Postal Service that same day in the ordinary course of business, (F) the name and address of the person served as shown on the envelope, and the date and place of business where the correspondence was placed for deposit in the United States Postal Service, and (G) that the envelope was sealed and placed for collection and mailing on that date following ordinary business practices."

[5] Code of Civil Procedure section 1013a, subdivision (1) provides that proof of service by mail may be made by the following method: "An affidavit setting forth the exact title of the document served and filed in the cause, showing the name and residence or business address of the person making the service, showing that he or she is a resident of or employed in the county where the mailing occurs, that he or she is over the age of 18 years and not a party to the cause, and showing the date and place of deposit in the mail,

requires additional averments where the declarant does not personally place the documents in the United States mail.

Finally, whether there was sufficient evidence to support the prosecution's alternative theories -- that the proofs falsely represented Dahm's address and the date the proofs were signed -- is of no consequence. Where, as here, the alleged inadequacy of proof is purely factual, "reversal is not required whenever a valid ground for the verdict remains, absent an affirmative indication in the record that the verdict actually did rest on the inadequate ground." (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129.) As detailed above, there is a valid ground for the jury's verdict and no affirmative indication in the record that the verdict rested on either of the alternative grounds urged.

## II
## The Trial Court Did Not Err in Refusing to Give a Unanimity Instruction

Defendant next contends that the trial court erred in refusing to give a unanimity instruction because "[t]he prosecution presented three separate factual foundations for each of the eight counts," namely that "P.O. Box 113 was not Dahm's residential or business address," the proofs of service were signed on a date other than that indicated, and Dahm did not personally place the documents in the mail. Defendant's contention lacks merit.

"[C]ases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act. [Citations.] [¶] This requirement of unanimity as to the criminal act 'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.' [Citation.]" (*People v. Russo* (2011) 25 Cal.4th 1124, 1132 (*Russo*).)

---

the name and address of the person served as shown on the envelope, and also showing that the envelope was sealed and deposited in the mail with the postage thereon fully prepaid."

"On the other hand, where the evidence shows only a single discrete crime *but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis or, as the cases often put it, the 'theory' whereby the defendant is guilty.* [Citation.] The crime of burglary provides a good illustration of the difference between discrete crimes, which require a unanimity instruction, and theories of the case, which do not. Burglary requires an entry with a specified intent. (Pen. Code, § 459.) If the evidence showed two different entries with burglarious intent, for example, one of a house on Elm Street on Tuesday and another of a house on Maple Street on Wednesday, the jury would have to unanimously find the defendant guilty of at least one of those acts. If, however, the evidence showed a single entry, but possible uncertainty as to the exact burglarious intent, that uncertainty would involve only the theory of the case and not require the unanimity instruction. [Citation.]" (*Russo, supra,* 25 Cal.4th at pp. 1132-1133, italics added.)

Here, defendant was charged with eight counts of knowingly procuring or offering a false instrument for filing in a public office. Each count involved a separate proof of service, and thus constituted a discrete crime. Consequently, the jury was required to agree that each proof of service offered was false; it was not, however, required to unanimously agree as to the manner in which it was false. Accordingly, no unanimity instruction was required. (*Russo, supra,* 25 Cal.4th at pp. 1132-1133.)

III

Defendant Was Given Adequate Notice of the Basis of the Charges Against Her

Defendant next contends that the trial court erred in overruling her "demurrer based on the failure of the information to give notice of the basis for the allegations of false documents." Again, we disagree.

7

A complaint was filed on October 31, 2011, charging defendant with, among other things, 13 counts of knowingly procuring or offering a false document (proof of service) for filing.

On April 2, 2012, a preliminary hearing was held. At the hearing, David Cox, an investigator for the Trinity County District Attorney's Office, testified that he took over an investigation initiated by the marshal's office into whether "false documents had been filed upon the court." In doing so, he interviewed Dahm, "the person represented on those documents" as having served as defendant's process server. Dahm told Cox that defendant said that Dahm could help her in her struggles against PG&E if he signed some papers she had. Dahm signed a stack of papers defendant provided by placing his initials on them, although he did not know what he was signing. He signed all the documents on the same date, at his home, in defendant's presence. He did not realize the documents were proofs of service, never agreed to act as a process server for defendant, and never served any document for her. Cox identified each of the proofs of service he reviewed with Dahm, and the trial court took judicial notice of eight proofs of service. The prosecutor argued that contrary to the information and representations set forth in the proofs of service, the evidence showed that the proofs of service were signed on the same date, and that "Mr. Dahm did not mail or serve or otherwise process anything."

The trial court held defendant to answer on eight counts of knowingly procuring or offering a false instrument for filing, and identified the filing date for each proof of service that formed the basis of each count.

The following day, April 3, 2012, an information was filed charging defendant with eight counts of knowingly procuring or offering a false instrument for filing. Those counts are based on the same eight proofs of service relied on by the prosecution at the preliminary hearing.

Thereafter, defendant filed a demurrer pursuant to section 952,[6] claiming that the information failed to give her adequate notice of the charges against her. The trial court overruled the demurrer, finding that the information, on its face, provided adequate notice of the charges against defendant.

"Due process of law requires that an accused be advised of the charges against [her] so that [s]he has a reasonable opportunity to prepare and present [her] defense and not be taken by surprise by evidence offered at [her] trial." (*People v. Jones* (1990) 51 Cal.3d 294, 317 (*Jones*).) "[N]otice is provided not only by the accusatory pleading but also by the transcript of the preliminary hearing or the grand jury proceedings. [Citations.] In addition, a 'defendant may learn further critical details of the People's case through demurrer to the complaint or pretrial discovery procedures.' [Citation.]" (*People v. Carrington* (2009) 47 Cal.4th 145, 183-184.)

Here, the preliminary hearing transcript and information provided defendant with ample notice of the charges against her. Significantly, copies of the eight proofs of service upon which the charges were based were introduced, and the prosecutor described how the proofs were false: they were not executed on the dates indicated, and the documents listed therein were not served by the declarant (Dahm). Nothing more was required. (*Jones, supra,* 51 Cal.3d at p. 317.)

---

[6] Section 952 provides in pertinent part: "In charging an offense, each count shall contain, and shall be sufficient if it contains in substance, a statement that the accused has committed some public offense therein specified. Such statement may be made in ordinary and concise language without any technical averments or any allegations of matter not essential to be proved. It may be in the words of the enactment describing the offense or declaring the matter to be a public offense, or in any words sufficient to give the accused notice of the offense of which he is accused."

## IV

## A Proof of Service Constitutes an "Instrument" Within the Meaning of Section 115

Defendant next claims that "proofs of service are not 'instruments' within the meaning of Penal Code § 115." She is mistaken.

Section 115 "punishes offering a false instrument for filing." (*People v. Tate* (1997) 55 Cal.App.4th 663, 664.) It was enacted in 1872 to protect the integrity of the judicial process and public records. (*People v. Hassan* (2008) 168 Cal.App.4th 1306, 1316.) While "[t]here currently is no precise, generally accepted definition of the term 'instrument' for purposes of Penal Code section 115" (*People v. Murphy* (2011) 52 Cal.4th 81, 92), a document is considered an instrument if the information contained therein " 'is of such a nature that the government is required or permitted by law, statute or valid regulation to act in reliance thereon . . . .' [Citation.]" (*People v. Powers* (2004) 117 Cal.App.4th 291, 297.)

There can be no doubt that the information contained in a proof of service is of such a nature that the government is required or permitted by law, statute, or valid regulation to act in reliance thereon. Courts rely on proofs of service for timeliness and notice. For example, as alluded to by Cooke, courts rely on proofs of service in determining whether a summons and complaint were properly served, and a default judgment properly entered. (See, e.g., *Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1201-1204.)

A proof of service is an instrument within the meaning of section 115.

## V

## Defendant's Trial Counsel Was Not Ineffective in Failing to Subpoena Kim Jesperson

Defendant next contends that her trial counsel was ineffective in failing to subpoena Kim Jesperson as a defense witness to impeach Dahm's testimony. We are not persuaded.

At the conclusion of the prosecution's case-in-chief, defendant's trial counsel moved to continue the trial one day in order to subpoena Jesperson, explaining that he attempted to serve Jesperson at his home the night before and although Jesperson was there, he refused to answer the door. Counsel claimed that Jesperson was a "material witness in this matter," who "would testify that he saw Mr. Dahm signing documents on at least two occasions." When defendant interjected, "three," counsel noted, "[p]robably even more" as to how many times Jesperson saw Dahm sign documents. The trial court denied defendant's motion to continue, reasoning that counsel had plenty of time to subpoena Jesperson even if he was trying to evade service.

Defendant's trial counsel responded that he had made earlier efforts to subpoena Jesperson, explaining that he had spoken numerous times to an investigator "for whom funds were ordered to help with investigation and just this exact type of thing." The investigator had exhausted most of those funds but assured counsel that "if there was something that . . . we needed, she could do it and then we could ask for the funds at a later time." He spoke to the investigator two days before the prosecution rested and confirmed that she had the subpoena. The following day, however, the investigator advised him that she refused to serve the subpoena because she was told by the trial court that "there was no money approved previously," and that is why he (defendant's trial counsel) "ended up" attempting to serve Jesperson the night before. The trial court affirmed its decision not to continue the trial, noting that Jesperson's proffered testimony "that documents were signed twice, or three times" was marginally relevant insofar as it did not seem to impeach Dahm, who testified that "he maybe signed . . . twice. And he . . . testified that he initialed some documents, and he also testified he signed some documents."

At that point, defendant requested a *Marsden* hearing to express her dissatisfaction with assigned counsel. (See *People v. Marsden* (1970) 2 Cal.3d 118, 124.) Defendant claimed that counsel falsely told her that the investigator had been out to interview and

serve Jesperson with a subpoena. She also claimed that Jesperson had told her that he saw Dahm sign documents at least three times, and that Dahm had said that everything on the proofs of service was correct. The trial court denied defendant's motion, stating that counsel "has done a heck of a job. He can't make Jesperson come here. He can't break his door down and subpoena him. You seem to have [an] enormous amount of contact with Jesperson and a lot of sway with him, and he hasn't come in at your request. . . . And as we know lots of witnesses simply don't want to be here, and he must be one of them."

On the date set for sentencing, defendant moved for a new trial and appointment of conflict counsel, arguing, in part, that there was "new evidence" refuting Dahm's testimony. In particular, defendant's trial counsel asserted, "Since the trial, the defendant has spoken with Mr. Jesperson and he says he was not avoiding service. Further, he informed [defendant] that he talked with Mr. Dahm about signing documents for her and Mr. Dahm assured him that everything was above board and he was doing exactly what the papers said he was." The motion for new trial was denied.

To establish ineffective assistance of counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. (*People v. Scott* (1997) 15 Cal.4th 1188, 1211-1212.)

Here, the record discloses that counsel arranged for an investigator to serve Jesperson but was advised the day before the prosecution rested that the investigator refused to serve the subpoena after learning that "there was no money approved previously." Defendant complains that "defense counsel could have secured a fee authorization earlier but failed to do so," and that "[t]his was beneath the fundamental standard of care for the defense counsel." Defendant's argument ignores counsel's statement that he was assured by the investigator that funding for such could be obtained after the fact. It also ignores counsel's subsequent effort to serve Jesperson himself, and Jesperson's refusal to answer the door. With the benefit of hindsight, it is easy to argue,

as defendant does, that it would have been better to have begun the process of serving Jesperson sooner and/or to have submitted a fee authorization request prior thereto. Under the circumstances of this case, however, we cannot say that counsel's choices were unreasonable.

## VI
### The Trial Court Did Not Err in Denying Defendant's Motions to Change Venue

Defendant next contends that the trial court erred in denying her motion to change venue "because of a long-running feud between [defendant] and court staff, which influenced the charging decision and the presentation of evidence, and led to a trial in a hostile forum." Again, we are not persuaded.

Prior to trial, defendant filed a motion to change venue, arguing that a fair trial in Trinity County was unlikely given the animus court personnel had previously shown toward her. The prosecutor opposed the motion, arguing defendant was "using her own really belligerent behavior" toward court staff to justify a change of venue. The trial court denied the motion, noting that it was not aware of any publicity surrounding the case, a factor it was required to consider even if not advanced by defendant; restrictions previously had been placed on defendant's access to the courthouse due to her conduct; and there was no evidence defendant's conduct would change or that the situation would otherwise be different in another county.

"A defendant's motion for change of venue must be granted when 'there is a reasonable likelihood that a fair and impartial trial cannot be had in the county' where the charges were filed. (§ 1033, subd. (a).) . . . [¶] On appeal, the defendant must show both error and prejudice, that is, ' "at the time of the motion it was reasonably likely that a fair trial could not be had in the county, and that it was reasonably likely that a fair trial was not had. [Citations.]" [Citation].' " (*People v. Harris* (2013) 57 Cal.4th 804, 822.) As we shall explain, defendant has failed to establish she did not *in fact* receive a fair and impartial trial.

13

There is no evidence in the record that suggests that the jury was aware of any animus on the part of court personnel toward defendant, much less that any such animus had any bearing on the jury's deliberations. None of the incidents referenced by defendant were seen by the jury; indeed, all of them predated the seating of the jury in this case. Moreover, defendant fails to point to any conduct that she contends influenced the jury in this case. Defendant's suggestion that animus lead the clerk's office to "cut-off investigation funds," which in turn lead to the failure to subpoena Jesperson, is specious. The record indicates that investigation funds were approved and had been exhausted by the time the defense sought to subpoena Jesperson. There is no evidence funds were cut off by the clerk's office.

Defendant failed to establish she did not receive a fair and impartial trial. Accordingly, her challenge to the court's denial of her motion to change venue fails.

## VII
### The Trial Court Acted Within Its Discretion in Denying Probation and Imposing Consecutive Terms

Finally, defendant contends the trial court abused its discretion by denying her probation and sentencing her to consecutive prison terms. She also claims separate prison terms were precluded under section 654. We disagree.

The probation report acknowledged that "the defendant is eligible for a grant of probation," but recommended probation be denied and defendant be committed to state prison based primarily on her perceived inability to comply with the conditions of probation (Cal. Rules of Court, rule 4.414(b)(4)).[7] According to the report: "The defendant has fought the judicial process and demonstrated time and again her inability to follow even minimal directions of the Court. She has almost made a career of fighting judicial process and standing up for what she believes are injustices placed upon her. Her

---

[7] Further undesignated references to rules are to the California Rules of Court.

14

disdain for the process is overwhelming. There is little belief by the Probation Department that the defendant would benefit from a grant of probation and [it is very likely] that she would make a grant of probation a long painful process for herself, Probation and the Court . . . ." The report also listed the following additional criteria affecting probation: defendant was an active participant in the filing of the false proofs of service with the court (rule 4.414(a)(6)); defendant had no prior record (rule 4.414(b)(1)); defendant was not currently on probation or parole (rule 4.414(b)(2)); defendant indicated she would be willing to comply with the terms of probation (rule 4.414(b)(3)); defendant will lose her Social Security benefits, home, and belongings if incarcerated (rule 4.414(b)(5)); and defendant showed no remorse for her actions (rule 4.414(b)(7)).

As for the term of incarceration, the report recommended that defendant be committed to state prison for an aggregate term of 6 years, consisting of 16 months (the low term) on count one, and a consecutive 8 months on each of the remaining seven counts. The report listed no circumstances in aggravation (rule 4.421), and defendant's lack of a prior record as a mitigating circumstance (rule 4.423(b)(1)).

At the sentencing hearing, the prosecutor asked the trial court to impose the aggravated term of 7 years 6 months, citing the following circumstances in aggravation: defendant induced Dahm to break the law by telling him his signature would help her in her lawsuit against PG&E (rule 4.421(a)(4)); and she used planning and sophistication by asking Dahm to sign a number of proofs of service which she used over a period of time (rule 4.421(a)(8)).

The trial court denied probation and sentenced defendant to 3 years 4 months in state prison, consisting of the low term of 16 months on count one, and a consecutive 8

15

months each on counts three, four, and six.[8]  Before doing so, the court observed that it had never encountered anyone "who has been so abusive to everybody in court," including the judge, "whatever deputy district attorney is here, the court staff, the reporters, [and] the bailiffs," as defendant had been.  Among other things, the court recounted an incident wherein defendant had been excluded from the jury instruction conference after repeatedly yelling and screaming and thereafter pounded on the door for one-half hour until the deputy told her she would be arrested if she continued.  The court also noted defendant's inability to follow court orders and failure to cooperate with probation.  The court dismissed defendant's claim that she did not intend to break the law, explaining that defendant has a juris doctorate and that "this isn't just somebody falling into a trap and not knowing what the law was and having somebody else sign it for another reason."  The court also agreed that defendant "does not accept any responsibility" for her actions, explaining that it was prepared to give her probation "if there was any remorse, any apology, anything that showed shat she cared about anything," but stated that it "heard not a word of that."

"A trial court has broad discretion to determine whether a defendant is suitable for probation.  [Citation.]  The determination whether a case is an 'unusual' case is also within the sound discretion of the trial court.  [Citation.]  An appellant bears a heavy burden when attempting to show an abuse of such discretion.  [Citation.]  To establish abuse, the defendant must show that, under all the circumstances, the denial of probation was arbitrary, capricious or exceeded the bounds of reason.  [Citation.]"  (*People v. Bradley* (2012) 208 Cal.App.4th 64, 89.)  In deciding whether to grant probation, the trial court should consider the various factors enumerated in rule 4.414, although it can consider other factors as well.  (*People v. Weaver* (2007) 149 Cal.App.4th 1301, 1312-

---

[8]  Defendant was sentenced to a concurrent 16 months on each of the remaining counts.

1313 (*Weaver*), disapproved on other grounds in *People v. Cook* (2015) 60 Cal.4th 922, 939; rule 4.408(a).)

When, as here, "a person is convicted of two or more crimes . . . the second or other subsequent judgment upon which sentence is ordered to be executed shall direct whether the terms of imprisonment or any of them to which he or she is sentenced shall run concurrently or consecutively." (§ 669.) A trial court has discretion in deciding whether to impose consecutive or concurrent terms and in exercising such discretion should consider the factors set forth in rule 4.425. (*People v. Rodriguez* (2005) 130 Cal.App.4th 1257, 1262-1263.)

A trial court is generally required to state reasons for denying probation and imposing a prison sentence. (*Weaver*, *supra*, 149 Cal.App.4th at p. 1313.) Unless the record shows otherwise, the trial court is deemed to have considered all relevant criteria in making its discretionary sentencing choices. (*Ibid.*) In determining whether the trial court abused its discretion in making a sentencing choice, we consider whether there is substantial evidence to support a finding that a particular sentencing factor was applicable. (*Ibid.*)

Defendant claims that the trial court improperly denied probation and sentenced her to state prison "to rid the community of a source of official irritation." Defendant's claim is not supported in the record. In deciding to deny probation and sentence defendant to state prison, the trial court cited defendant's inability to comply with the terms of probation and her lack of remorse. Rule 4.414 expressly lists ability to comply with reasonable terms of probation and whether the defendant is remorseful as factors that should be considered by a trial court in deciding whether to grant or deny probation. (Rule 4.414(b)(4), (7).) Based on our review of the record, we find there is sufficient evidence to support the trial court's findings that defendant lacked the ability to comply with reasonable terms of probation and showed no remorse for her crimes. As detailed by the trial court, defendant has a long history of failing to obey court orders, was abusive

17

to court personnel throughout the trial, and refused to cooperate with probation until ordered to do so by the trial court.  Moreover, in her written statement to probation, defendant failed to take any responsibility for her actions, showed no remorse, and continued to blame others for her predicament.  The trial court acted well within its discretion in denying probation and sentencing defendant to state prison.

Assuming we conclude, as we have, that the trial court did not abuse its discretion in denying probation and sentencing defendant to state prison, defendant contends that "[n]o reasons were suggested to support the imposition of consecutive sentences, either in the probation report or the sentencing transcript," and consecutive sentences were not justified because "the crimes were not independent of each other."

As a preliminary matter, defendant failed to object to the imposition of consecutive sentences below, and thus, forfeited the issue on appeal.  (*People v. Gonzalez* (2003) 31 Cal.4th 745, 755-756.)  In her reply brief, defendant asserts that her claim is not that the trial court failed to give any reasons for imposing consecutive sentences but that "regardless of the purported reasons for the sentencing choices, consecutive sentencing was an abuse of discretion."  Defendant did not object on that ground below, thereby forfeiting that issue as well.  (*Ibid.*)  Even if the issue had been preserved, it lacks merit.  Rule 4.425(a)(1) expressly lists "[t]he crimes and their objectives were predominantly independent" as a relevant factor in deciding whether to impose consecutive rather than concurrent sentences.  Section 115, subdivision (a) prohibits knowingly procuring or offering any false document for filing in any public office.  Here, the proofs of service that form the basis of counts one, three, four, and six were filed on July 1, 13, 15, and 21, 2011, respectively.  In addition, the proofs of service that form the basis for counts one, three, four, and six pertains to different documents and were filed in three separate cases.  These facts support a finding that counts one, three, four, and six were committed independent of one another.

Lastly, defendant's claim that the execution of separate sentences for each of his convictions for offering a false instrument for filing violates section 654's bar against double punishment fails. Ordinarily, section 654 prohibits multiple punishments for more than one offense where the offenses are committed during an " 'indivisible transaction' " having a single criminal objective. (*People v. Gangemi* (1993) 13 Cal.App.4th 1790, 1799.) However, a different rule applies to offering false instruments for filing or recording in violation of section 115. (*Gangemi*, at p. 1800.) "For purposes of prosecution under this section [115], each act of procurement or of offering a false or forged instrument to be filed, registered, or recorded shall be considered a separately punishable offense." (§ 115, subd. (d).) "This language demonstrates an express legislative intent to exclude section 115 from the penalty limitations of section 654. Thus, the Legislature has unmistakably authorized the imposition of separate penalties for each prohibited act even though they may be part of a continuous course of conduct and have the same objective. . . . [E]ach false filing is separately punishable." (*Gangemi*, at p. 1800.)

## DISPOSITION

The judgment is affirmed.


     BLEASE     , Acting P. J.


We concur:


     HULL     , J.


     HOCH     , J.